USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/23/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GERARDO PEREZ,

Plaintiff,

-against-

TRINITY SCHOOL REALTY HOLDING CORPORATION, JOHN ALLMAN and ALEXIS MULVIHILL,

Defendants.

24-CV-544 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff Gerardo Perez sued Defendants Trinity School ("Trinity"), John Allman, and Alexis Mulvihill for discrimination, retaliation, and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). Defendants moved for summary judgment. *See* Motion for Summary Judgment, Dkt. 87 (the "Motion" or "Mot."). Plaintiff opposed. *See* Opp. to Mot., Dkt. 91 ("Opp."). The Motion is GRANTED.

## BACKGROUND[1]

Trinity is a private K-12 school located in New York City. Rule 56.1 Statement, Counterstatement, and Statement of Additional Material Facts ("Rule 56.1 Stmnt."), Dkt. 94 ¶ 24. John Allman was Trinity's Head of School, and Alexis Mulvihill was Trinity's Assistant

[1] These material facts are gathered from the parties' consolidated Rule 56.1 statement, Dkt. 94, the exhibits to the parties' submissions, and the parties' summary judgment briefs. The facts are construed in the light most favorable to the non-moving party. *See Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). All facts are undisputed unless otherwise indicated.

Head of School at all times relevant to this Motion. *Id.* ¶¶ 37, 49. In 2020, Allman hired Plaintiff as a Learning Support Specialist. *Id.* ¶¶ 16–17. Allman had the authority to hire and fire Plaintiff and sole authority to decide whether to renew his contract. *Id.* ¶¶ 39–40.

About a year into Plaintiff's tenure at Trinity, discord began to emerge between him and some of his colleagues. In August 2021, Chaztery Cruz, a woman who worked with Plaintiff, contacted the director of their department to raise concerns about Plaintiff's "harsh communicative tone." *Id.* ¶¶ 86–87. In the fall of 2021, Cruz and a female colleague, Elisse Battle, complained to Trinity's human resources ("HR") department about Plaintiff "engaging in microaggressions." *Id.* ¶ 107. Plaintiff lodged complaints of his own about Cruz and Battle, accusing them of treating him poorly because he is male. *Id.* ¶¶ 107, 387. In response, the director of Plaintiff's department emailed staff members "guidelines for the working environment," noting that some employee interactions had become "noticeably difficult and, at times, unpleasant." *Id.* ¶ 108.

Tensions between Plaintiff and his female colleagues — especially Cruz — continued to escalate over the next several months. Among other things, Plaintiff accused Cruz of being overly critical of his work, *id.* ¶¶ 117–121, and Plaintiff exchanged heated emails with Cruz and Battle about various internal processes, *id.* ¶¶ 122–138. In response to Plaintiff's accusation that Cruz and Battle had subjected him to negative treatment because he was male, in December 2021, HR investigated and concluded that there was "no 'substantiated evidence of mistreatment based on gender bias,'" but recommended that the school engage an outside mediator to address the "unsustainable working environment." *Id.* ¶¶ 141–142.

Cruz took issue with what she perceived to be HR's failure to address Plaintiff's "abusive, offensive, and reckless communication and behavior." *Id.* ¶¶ 144–146. She continued

to report, both to HR and to the director of the department, "[c]oncerning reaction[s]" from Plaintiff, including one in which Plaintiff "barreled past [her]" upon entering the office, nearly causing a collision. *Id.* ¶¶ 148–150 (alteration in original).

Around January 2022, Trinity engaged a private mediator to attempt to resolve the burgeoning conflict between Plaintiff and Cruz. *Id.* ¶ 153. Defendant Allman approved the decision to hire the mediator, explaining that he had "grow[n] frustrated" with Plaintiff and Cruz. *Id.* ¶ 156. The private mediation was not successful. *Id.* ¶¶ 163–164. Dysfunction between Plaintiff and Cruz continued, leading Trinity to retain a private firm to conduct an internal investigation into the relationship between the two and specifically into "allegations made by [Cruz] that [Plaintiff] had engaged in a multitude of bullying, harassing and retaliatory behavior that created a hostile work environment at Trinity." *Id.* ¶¶ 165–166, 168. The firm ultimately concluded that neither Plaintiff nor Cruz had violated Trinity's policies but that their relationship was "irretrievably broken." *Id.* ¶¶ 174–177.

The relationship deteriorated even further in the fall and winter of 2022. Among other things, Cruz accused Plaintiff of harassment after a dispute arose about proctoring a student's exam. *Id.* ¶¶ 196–201. Plaintiff and Cruz raised many formal complaints against one another, with Plaintiff complaining specifically about Cruz's purported gender-based harassment in October, November, and December of 2022. *Id.* ¶¶ 200, 355, 387–388.[2]

In February 2023, Allman decided not to renew either Plaintiff or Cruz's employment contracts, reasoning that the "continuous and seemingly unending strife between [them] necessitated a firm resolution." *Id.* ¶¶ 226, 228. He later explained that he decided not to renew either contract because he "felt the difficulties were spreading from behaviors on both sides" and

[2] Plaintiff even suggested that someone placed fecal matter in his office as a deliberate act of gender harassment, although he did not specifically accuse Cruz of being the perpetrator. 56.1 Stmnt. ¶¶ 183–184.

that it "would not be fair" to renew one but not the other. *Id.* ¶ 231. Allman told Plaintiff that his contract would not be renewed and presented him with a separation agreement; Plaintiff refused to sign the separation agreement. *Id.* ¶¶ 290, 292.

Two days before Plaintiff's deadline to sign the separation agreement, Trinity's information technology department notified Allman that Plaintiff had sent confidential documents, including neuropsychiatric evaluations of students, from his school email to his personal email. *Id.* ¶¶ 237–238, 242. Plaintiff was placed on leave while Trinity investigated the incident; approximately one month later, Plaintiff was terminated. *Id.* ¶¶ 241, 244. The termination letter stated that Perez was being fired because he "transferr[ed] hundreds of school emails — some with sensitive, private information such as students' neuropsychological testing — to a personal email account," in violation of Trinity's confidentiality policy. *Id.* ¶ 244.

Plaintiff initiated this action, bringing claims of discrimination, retaliation, and hostile work environment pursuant to Title VII, the NYSHRL, and the NYCHRL. *See generally* Am. Compl., Dkt. 8. Following discovery, Defendants moved for summary judgment on all claims. *See generally* Mot. Plaintiff opposed. *See generally* Opp.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing

law" preclude summary judgment. *SJN Props. LLC v. Harleysville Ins. Co.*, 738 F. Supp. 3d 405, 411 (S.D.N.Y. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). On a motion for summary judgment, the Court must construe the facts in the light most favorable to the non-moving party; however, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019).

## II. Discrimination Claims

### A. Title VII

Title VII makes it unlawful to discriminate on the basis of sex. 42 U.S.C. § 2000e–2(a)(1). Discrimination claims brough pursuant to Title VII are analyzed using the three-step, burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case to support an inference of discrimination by showing "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Should the defendant do so, the burden shifts back to the plaintiff to present evidence that the proffered justification was a pretext for discrimination. *Id.* "A plaintiff 'may succeed under the *McDonnell Douglas* framework either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's

proffered explanation is unworthy of credence.'" *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 309 (2025) (cleaned up). "[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Holtz v. Rockefeller & Co*., 258 F.3d 62, 78 (2d Cir. 2001) (collecting cases).

Defendants do not contest that Plaintiff can carry his burden as to the first three elements of the *prima facie* inquiry, inasmuch as (1) his gender renders him a member of a protected class, (2) he was qualified for his role, and (3) he suffered two adverse employment actions (*i.e.*, his contract was not renewed and he was terminated). *See* Mot. at 7. Defendants argue, however, that Plaintiff cannot show that either action occurred under circumstances that give rise to an inference of discriminatory intent.

To determine whether there is evidence to support an inference of discrimination, the Court considers "circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse employment action]." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015) (internal quotation marks omitted).

The Court agrees that Plaintiff has not put forth evidence sufficient to create a question for the jury of discriminatory intent with respect to either adverse employment action.

*i. Decision Not to Renew Plaintiff's Contract*

Plaintiff relies primarily on the "cat's paw" theory of liability to argue that a question of fact exists. Cat's paw liability arises when

> an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive,

> but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action. Because the supervisor, acting as agent of the employer, has permitted himself to be used as the conduit of the subordinate's prejudice, that prejudice may then be imputed to the employer and used to hold the employer liable for employment discrimination.

*Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 51 (2d Cir. 2025) (quoting *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d Cir. 2016)). Through cat's paw liability, an employer-defendant can be held liable if (1) "the plaintiff's co-worker makes statements maligning the plaintiff, for discriminatory reasons and with the intent to cause the plaintiff's firing;" (2) "the co-worker's discriminatory acts proximately cause the plaintiff to be fired;" and (3) "the employer acts negligently by allowing the co-worker's acts to achieve their desired effect though it knows (or reasonably should know) of the discriminatory motivation." *Vasquez*, 835 F.3d at 274.

Plaintiff has failed to provide evidence that could lead a reasonable jury to infer that Defendant acted with discriminatory intent pursuant to a cat's paw theory. As an initial matter, the Court is skeptical that there is sufficient evidence for a jury to find in Plaintiff's favor as to the first two elements of the theory. First, there is no evidence that Cruz intended to cause Plaintiff's contract not to be renewed because of his sex — although Cruz complained frequently about Plaintiff's "demeaning, offensive, and harmful communication" and his engagement in "bullying, harassing and retaliatory behavior," Plaintiff presents no evidence that Cruz's complaints were made because of his sex. Rule 56.1 Stmnt. ¶¶ 145, 168. Likewise, as to the second element, construing the evidence in Plaintiff's favor, a reasonable jury could only conclude that it was the toxic effect on the workplace of Plaintiff and Cruz's mutually antagonistic relationship, as opposed to any animus Cruz purportedly harbored against Plaintiff due to his gender, that led Allman not to renew either of their contracts.

Regardless, even if the Court were to assume that Cruz harbored a private intent to cause Allman not to renew Plaintiff's contract because of his sex, no reasonable jury could conclude that Defendants "negligently" adopted Cruz's discriminatory agenda. To the contrary, Trinity attempted for more than eighteen months to mediate the conflict between Plaintiff and Cruz — first with the department head, then with an HR investigation, then with a private mediation firm, and then with an outside investigative firm. *See* 56.1 Stmnt. ¶¶ 108, 140, 153, 165. Each intervention led to a finding that (1) Plaintiff and Cruz's antagonistic relationship with each other created a toxic work environment, and (2) neither Plaintiff nor Cruz was engaged in a campaign of harassment or gender discrimination. *See, e.g.*, *id.* ¶ 142 (following investigation, HR director "concluded that there was no 'substantiated evidence of mistreatment based on gender bias,' but she did believe 'that there are situations, both past, and present, that are contributing to an unsustainable working environment in the department'"); *id.* ¶¶ 172, 175 (following a two-month investigation, outside firm concluded that, "[w]hile both [Plaintiff and Cruz] may subjectively believe they are being targeted and harassed by each other, and feel 'unsafe,' a reasonable view of the evidence does not support a policy violation by either party" (first alteration in original)). It was only after Trinity spent a year and a half — and tens of thousands of dollars investigating — that Allman made the decision not to renew either employee's contract. And the rationale Allman gave for not renewing the contracts echoed what internal and outside investigators had all already concluded: Plaintiff and Cruz's behavior "violated the tone and tenor of what [was] hoped and expected for faculty." Wright Decl., Ex. 11, Dkt. 88-11 at 147:5–19.

While that uncontroverted evidence is sufficient to defeat the cat's paw theory, there is additional evidence that undercuts Plaintiff's theory: Cruz's contract was not renewed at the

same time as Plaintiff's. As Allman explained, "the difficulties were spreading from behaviors on both sides and [it] would not be fair" to renew one contract but not the other. *Id.* at 146:3–5. Plaintiff cannot explain why, and no rational factfinder could conclude, that Defendants would not renew Cruz's contract while, at the same time, rubber-stamping her unfair characterizations of Plaintiff.

Beyond the cat's paw theory, Plaintiff proffers two alternative theories of liability: segregation and sabotage. *See* Opp. at 14–15. Neither is coherent.

With respect to the segregation theory, Title VII make it unlawful for an employer "to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise affect his status as an employee, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(2). Here, the sole argument Plaintiff advances to create a question of fact relative to segregation is that Cruz refused to work with Plaintiff and once left a room when he entered. Opp. at 15. The notion that those incidents amount to "segregation" by Defendants is absurd: even if Plaintiff could provide evidence that Cruz chose not to be around Plaintiff because of his sex, that would not in any way prove that Defendants enforced or tolerated a policy of segregation.

Plaintiff's sabotage theory is equally meritless. The argument that Defendants "sabotaged" Plaintiff stems entirely from *his* complaints *about Cruz* — specifically, that she coordinated other employees to file complaints about him, refused to provide him with the keys to a file cabinet, and asked him to refrain from communicating with her directly. *Id.* Plaintiff makes no attempt to explain how those incidents amounted to "sabotage" by the Defendants, nor has he provided any evidence that Cruz engaged in any of those behaviors because of gender-based animus.

In short, no reasonable jury could conclude that the decision not to renew Plaintiff's contract occurred under circumstances that give rise to an inference of discriminatory intent. Plaintiff, therefore, cannot establish a *prima facie* case of discrimination, obviating the need to conduct the remaining steps of the *McDonnell Douglas* analysis.

*ii. Termination*

Plaintiff also fails to present evidence that would permit a reasonable jury to infer that Defendants acted with discriminatory intent when they fired him. As best the Court can discern from Plaintiff's Opposition, Plaintiff's sole argument (that is not duplicative of the uncompelling arguments made about his contract not being renewed) is that, although Trinity says that it terminated Plaintiff because he mishandled sensitive student information, female employees at Trinity had sent sensitive information externally without facing discipline.[3] Opp. at 27–28. Disparate treatment can be sufficient to support an inference of discriminatory intent. *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) ("A showing that the employer treated a similarly situated employee differently is 'a common and especially effective method' of establishing a *prima facie* case of discrimination[.]").

Here, however, Plaintiff has marshaled no admissible evidence to support his assertion that female employees who engaged in similar conduct were treated differently. The examples that Plaintiff provides in the 56.1 Statement are supported only by conclusory assertions from Plaintiff's own declaration, *see* 56.1 Stmnt. ¶¶ 436–437, 439, or, in one case, a document that, for reasons that Plaintiff fails to explain, was never produced during discovery, *id.* ¶ 438.

---

[3] Plaintiff argues that there is sufficient evidence to create a question for the jury whether Defendants' rationale for his termination was pretextual, *see* Opp. at 26–28, "[b]ut the issue of pretext is reached only if a plaintiff first makes out a prima facie case of employment discrimination." *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 945 (2d Cir. 2008) (citing *McDonnell Douglas*, 411 U.S. at 802–03)).

Neither type of evidence is sufficient to create a genuine dispute of material fact on summary judgment. *See Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." (cleaned up)); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

The Court, therefore, affords no weight to Plaintiff's evidence-free assertions that female employees went undisciplined for sending confidential student information to outside email addresses. Because Plaintiff offers no other non-duplicative arguments to support the inference that he was fired under circumstances giving rise to an inference of discrimination, the Court finds that Plaintiff has failed to establish a *prima facie* case of discrimination with respect to his termination.

**B. NYSHRL and NYCHRL**

Discrimination claims brought pursuant to the NYSHRL and NYCHRL are subject to a less exacting standard than Title VII claims. *See Livingston v. City of N.Y.*, 563 F. Supp. 3d 201, 232–234 & 234 nn.14–15 (S.D.N.Y. 2021). To survive summary judgment on such claims, the plaintiff must show that there is a genuine dispute of material fact as to whether he was treated "less well" than other employees, at least in part because of discrimination. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). If the defendant provides evidence of legitimate, non-discriminatory reasons for its actions, it will succeed on a motion for summary judgment if "the record establishes as a matter of law that discrimination played no role in the defendant's actions." *Id.* at 110 n.8 (cleaned up). Nevertheless, Plaintiff "still bears

the burden of showing that the conduct is caused by a discriminatory motive." *Id.* at 110. "Courts evaluating the sufficiency of evidence on a motion for summary judgment must 'carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture.'" *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 66 (S.D.N.Y. 2016) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999)).

Even applying the comparatively relaxed standards of the NYSHRL and the NYCHRL, Plaintiff has failed to satisfy his *prima facie* burden because he has not proffered any evidence from which a jury could infer that he was treated "less well" than others because of his gender. Plaintiff's entire argument rests on the notion that Defendants "adopted" Cruz's perceptions of him, which he asserts were rooted in anti-male animus. *See* Opp. at 17. For the reasons already discussed — including the fact that Defendants engaged in multiple investigations of both Plaintiff and Cruz, the findings from which were critical of the behavior of both employees, *see* Rule 56.1 Stmnt. ¶¶ 142, 174 — that theory finds no support in the evidence.

Perhaps more fundamentally, even if Plaintiff could show that Cruz disliked him at least *in part* because he is male, he has not shown that Cruz's disdain for him resulted in Defendants treating him less well than her or any of his other female colleagues. The lenient standards of the NYSHRL and the NYCHRL still require a plaintiff to "show differential treatment . . . *because* of a discriminatory intent." *Milhalik*, 715 F.3d at 110 (emphasis added). Defendants declined to renew both Plaintiff's and Cruz's contracts in light of their ongoing conflict, and they fired Plaintiff only after finding that he committed a separate policy violation. Plaintiff simply has not

pointed to any admissible evidence creating a triable issue of fact as to whether any similarly situated employee — male or female — was treated differently.[4]

In short, Defendants are entitled to summary judgment as to the discrimination claims brought pursuant to the NYSHRL and the NYCHRL.

## III. Retaliation Claims

### A. Title VII

Title VII makes it unlawful to retaliate against an employee for participating in activity protected by Title VII. 42 U.S.C. § 2000e–3(a). Title VII retaliation claims, like discrimination claims, are evaluated using the *McDonnell Douglas* burden-shifting framework. *Hicks*, 593 F.3d at 164. A plaintiff establishes a *prima facie* case of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* A causal connection "can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id.* at 170. Once the *prima facie* case is established, the burden shifts to the defendant to provide a legitimate, non-discriminatory justification for the adverse employment action, and then back to the plaintiff to show that the defendant's justification is pretextual. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). To show pretext, "a plaintiff may rely on evidence comprising her *prima facie* case, including temporal proximity,

---

[4] As explained in Section II.A.ii, *supra*, Plaintiff's assertion that female employees who mishandled sensitive information were not subject to termination is not supported by any admissible, non-conclusory evidence.

together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Id.* at 847.

*i. Decision Not to Renew Plaintiff's Contract*

With respect to Trinity's decision not to renew Plaintiff's contract, it is undisputed that (1) Plaintiff participated in a protected activity (*i.e.*, filing harassment complaints about Cruz), (2) Defendants knew of that activity, and (3) Defendants took an adverse employment action by not renewing Plaintiff's contract. *See* Mot. at 16–17. Defendants argue that Plaintiff cannot satisfy the fourth step of the *prima facie* inquiry for retaliation because he cannot show a causal connection between the protected activity and his contract not being renewed. *Id.* The Court disagrees: Plaintiff filed complaints with HR about gender-based harassment as late as December 2022 and received notice that his contract would not be renewed in February 2023. Rule 56.1 Stmnt. ¶¶ 235, 388. These two events are close enough in time to show indirectly, for purposes of the *prima facie* inquiry, a causal connection between the protected activity and the adverse employment action. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship.").

Having established a *prima facie* case of retaliation, the burden shifts to Defendants to provide a legitimate, non-discriminatory justification for the adverse employment action. As discussed at length above, the proffered justification is that the ongoing tension between Plaintiff and Cruz created an unsustainable working environment. Plaintiff argues that explanation is pretextual because the adverse employment action occurred shortly after he filed complaints against Cruz. *See* Opp. at 24. Plaintiff's argument fails, however, as "[t]emporal proximity

alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan*, 737 F.3d at 847.

Beyond that, Plaintiff asserts that Defendants never gave him any "warnings, discussions, or performance improvement plans" prior to deciding not to renew his contract and never found him guilty of violating any school policies. Opp. at 20. As the Court has noted, Defendants discussed on many occasions with Plaintiff and Cruz the corrosive effect their toxic relationship was having on the work environment. Regardless, Plaintiff's general complaints that he was not given adequate opportunities to improve his performance before his contract was not renewed have no bearing on whether the reason Defendants gave for not renewing his contract was somehow a pretext for retaliation. Although Plaintiff and Cruz's incessant complaints contributed to the conflict that was clearly the cause of their contracts not being renewed, there is no evidence that the complaints, by themselves, were the motivating factor for Defendants' decision not to renew Plaintiff's contract. Rather, the record is clear that Defendants assessed the totality of the circumstances and decided not to renew either employee's contract because of the unprofessional behavior exhibited by Plaintiff and Cruz and the unsustainable work environment their behavior created.

Further, Plaintiff's conclusory assertion that Defendants provided "shifting and illogical" explanations for not renewing his contract, *see* Opp. at 20, is nonsensical. As the Court recounted in Section II.A.i., *supra*, Defendants' frustration with the behavior of Plaintiff and Cruz was extraordinarily well-documented and consistently cited as the reason each employee's contract was not renewed.

Accordingly, Plaintiff has failed to establish a genuine dispute of material fact as to whether the proffered justification for not renewing his contract was a pretext for retaliation.

*ii. Termination*

With respect to the termination, Defendants again do not dispute that (1) Plaintiff participated in a protected activity (*i.e.*, opting not to sign a separation agreement that would have waived his right to sue),[5] (2) Defendants knew of that activity, and (3) Defendants took an adverse employment action by firing him. *See* Mot. at 16. Plaintiff satisfies the fourth element of the *prima facie* inquiry — demonstrating indirectly a causal connection between his refusal to sign the separation agreement and his termination — with evidence that his termination occurred within three months of his refusal to sign the agreement. *See* 56.1 Stmnt. ¶ 292 (Plaintiff notified Allman on February 5, 2023, that he would not sign the separation agreement); *id.* ¶ 300 (Plaintiff was terminated on April 14, 2023); *see also Gorzynski*, 596 F.3d at 110 (five months between protected activity and adverse employment action may satisfy *prima facie* showing of causation for retaliation).

As with the decision not to renew his contract, however, Plaintiff fails to provide evidence showing that the non-retaliatory justification for his termination — *i.e.*, the fact that he sent confidential student health information to his personal email account — was pretextual. That Plaintiff was terminated shortly after engaging in protected activity is not, on its own, sufficient to show pretext on summary judgment. *Zann Kwan*, 737 F.3d at 847. Plaintiff's temporal argument is especially weak here because Defendants first learned that Plaintiff had transmitted student data more than a month *after* Plaintiff first told Allman that he would not

---

[5] The Court need not address whether Plaintiff opting not to sign a separation agreement that would have waived his right to sue is a protected activity because, here, the parties have not disputed that it was a protected activity, and this argument is moot on other grounds. An individual engages in a protected activity if they oppose "any practice made an unlawful employment practice by [Title VII], or because [they] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a); *see also Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 48 (2d Cir. 2012).

sign the separation agreement, disrupting the (already tenuous) circumstantial link between Plaintiff's refusal and his ultimate termination. *See* 56.1 Stmnt. ¶¶ 237, 292.

More fundamentally, Plaintiff simply has not presented any admissible, non-conclusory evidence that could lead a factfinder to conclude that his refusal to sign the separation agreement in any way contributed to Defendants' decision to fire him.[6] He does not point the Court to a single piece of evidence that even references his refusal to sign the separation agreement in the context of any of the Defendants discussing the decision to fire him. In short, there is no evidence from which a reasonable jury could conclude that the proffered rationale for Plaintiff's termination was pretextual.

**B. NYSHRL and NYCHRL**

Retaliation claims brought pursuant to NYSHRL and NYCHRL are also evaluated using the *McDonnell Douglas* framework, although the standards differ somewhat. *Edelman*, 141 F.4th at 45. To satisfy the *prima facie* burden, the plaintiff must show that he "took an action opposing h[is] employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id.* Once that burden is satisfied, "the defendant then has the opportunity to offer legitimate reasons for its actions." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75–76 (2d Cir. 2015). If a non-discriminatory justification is offered, the burden shifts back to the plaintiff to show "either that the defendant's reasons were pretextual, or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part" on retaliation. *Id.* at 76 (internal quotation

[6] The evidence supporting Plaintiff's argument that other employees engaged in similar conduct without facing consequences is inadmissible for the reasons described in Section II.A.ii of this opinion.

marks and citation omitted). Summary judgment is appropriate only if "the record establishes as a matter of law that . . . retaliation played no role in the defendant's actions." *Id.* (cleaned up).

Plaintiff does not meaningfully address his NYSHRL and NYCHRL retaliation claims in his Opposition. The Court can surmise, however, that Plaintiff intends to argue that he took actions opposing his employer's discrimination (*e.g.*, his complaints about Cruz and his refusal to sign the separation agreement) and that, because of these actions, Defendants engaged in conduct that was likely to deter such action (*e.g.*, his contract was not renewed, and he was terminated). Even assuming that satisfies Plaintiff's *prima facie* burden, summary judgment must be entered on behalf of Defendants because Plaintiff cannot show that Defendants' proffered justifications for not renewing his contract and terminating him were motivated in any way by retaliation. As discussed, there is no evidence whatsoever to suggest that Defendants ever considered, or even discussed, Plaintiff's protected activity (his complaints about Cruz or his refusal to sign the separation agreement) when they chose not to renew his contract and later to terminate him. Even under the NYSHRL and NYCHRL's more lenient standards, there is simply no evidence that could lead a reasonable jury to conclude that retaliation played any role in either adverse employment action.

## IV. Hostile Work Environment Claims

### A. Title VII

In addition to protecting employees from disparate treatment on the basis of protected characteristics, Title VII "evinces a congressional intent to strike at the entire spectrum of disparate treatment . . . , which includes requiring people to work in a discriminatorily hostile or abusive environment." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (internal quotation marks omitted). To establish a hostile work environment claim pursuant to Title VII,

"a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To satisfy this standard, "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* Additionally, "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* "An employer cannot be subject to a hostile work environment claim, however, if the 'employer has in good faith taken those measures which are both feasible and reasonable under the circumstances to combat [the] offensive conduct.'" *Russell v. N.Y. Univ*., 739 F. App'x 28, 30 (2d Cir. 2018) (quoting *Snell v. Suffolk Cnty.*, 782 F.2d 1094, 1104 (2d Cir. 1986)).

Plaintiff does not meaningfully discuss his hostile work environment claims in his Opposition, but it is self-evident that Defendants did what was feasible and reasonable — and more — to attempt to address Plaintiff and Cruz's disruptive conduct. Over the course of eighteen months, Defendants conducted internal HR investigations, an external mediation, and an investigation by an independent firm, all with the goal of alleviating the conflict between the two. *See* 56.1 Stmnt. ¶¶ 140, 153, 165. Although those efforts ultimately failed (in no small part because Plaintiff continued to initiate spats with Cruz), Defendants' response clearly indicates that they made meaningful efforts and incurred significant expenses to attempt to ameliorate the hostility between Plaintiff and Cruz. *See Russell*, 739 F. App'x at 31 (quoting *Whidbee v. Garzarelli Food Specialties, Inc*., 223 F.3d 62, 72 (2d Cir. 2000)) ("[A]n employer need not prove success in preventing harassing behavior in order to demonstrate that it exercised

reasonable care in preventing and correcting [the] harassing conduct."). Plaintiff has provided no evidence or argument to the contrary.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim pursuant to Title VII.

**B. NYSHRL and NYCHRL**

"The standard for maintaining a hostile work environment claim is lower under the NYCHRL" and the NYSHRL than under Title VII. *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011).[7] "Under the NYCHRL [and the NYSHRL], unlike under Title VII . . . there is no distinction between a claim premised on the creation of a hostile work environment (a species of harassment claim) and one premised on unlawful discrimination." *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 262 (S.D.N.Y. 2025). To succeed on a claim of hostile work environment pursuant to the NYSHRL and the NYCHRL, "the plaintiff need only show differential treatment that she is treated less well — because of a discriminatory intent." *Mihalik*, 715 F.3d at 110 (internal quotation marks omitted).

For the reasons discussed in Section II.B, there is no evidence in the record that would allow a reasonable jury to conclude that Plaintiff was treated less well than others because of Defendants' discriminatory intent. Accordingly, his NYSHRL and NYCHRL hostile work environment claims, like his NYSHRL and NYCHRL discrimination claims, cannot survive summary judgment.

[7] Pursuant to the 2019 amendments to the NYSHRL, discrimination claims brought pursuant to the NYSHRL — including hostile work environment claims — are assessed using the same standards as claims brought pursuant to the NYCHRL. *Livingston*, 563 F. Supp. 3d at 232 n.14.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment, Dkt. 87, is GRANTED. The Clerk of Court is respectfully directed to TERMINATE all open motions on the docket and to CLOSE this case.

**SO ORDERED.**

**Date: July 23, 2026**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**